UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DWAYNE EDMUND WILSON,

                Plaintiff,

    v.

UNKNOWN WOLLAN, et al.

                Defendants.

_____/

Case No.  2:23-cv-0013

Hon.  Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 33.)  Additionally, this R&R addresses Plaintiff's motion for summary judgment.  (ECF No. 43.)

Plaintiff — state prisoner Dwayne Wilson — filed his unverified complaint pursuant to 42 U.S.C. § 1983 on January 23, 2023.  (ECF No. 1.)  The alleged events occurred at the Chippewa Correctional Facility. (*Id.*)  Wilson alleged that on August 27, 2022, Defendant Corrections Officer (CO) Wollan injured him by closing his cell door on him, and then denied him medical care. (*Id.*, PageID.3.)  Wilson says that he was then moved to a new unit where two defendants – CO Woodard and CO Miller – began harassing him.  (*Id.*, PageID.6.)  And Wilson says that Defendant Prison Counselor (PC) Vollick told him that he would not get a single cell.  (*Id.*)  Wilson also

says that Nurse Practitioner (NP) Buchanan told him there was nothing wrong with him and refused to provide care. (*Id.*, PageID.10.)

CO Woodard, CO Miller, and PC Vollick filed a motion for summary judgment, arguing that Wilson failed to exhaust his administrative remedies against them.  CO Wollan and NP Buchanan did not join in that motion.  Wilson has not responded.

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motion for summary judgment and dismiss Defendants Woodard, Miller, and Vollick from this action due to Wilson's failure to exhaust his administrative remedies.  If the Court adopts this recommendation, Wilson's claims again CO Wollan and NP Buchanan will remain in the case.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

[1]    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy

5

Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶ DD.  The respondent at Step II is designated by the policy.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust

administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on

---

[2]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S.

Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead

consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v.*

*Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and
> therefore does not exhaust his administrative remedies under the
> PLRA—when he does not specify the names of each person from whom
> he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th
> Cir. 2010) ("Requiring inmates to exhaust prison remedies in the
> manner the State provides—by, say, identifying *all* relevant
> defendants—not only furthers [the PLRA's] objectives, but it also
> prevents inmates from undermining these goals by intentionally
> defaulting their claims at each step of the grievance process, prompting
> unnecessary and wasteful federal litigation process.").  An exception to
> this rule is that prison officials waive any procedural irregularities in a
> grievance when they nonetheless address the grievance on the merits.
> *See id*. at 325.   We have also explained that the purpose of the PLRA's
> exhaustion requirement "is to allow prison officials 'a fair opportunity'
> to address grievances on the merits to correct prison errors that can and
> should be corrected to create an administrative record for those disputes
> that eventually end up in court."  *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

### IV.  Plaintiff's Allegations

Arguably, Plaintiff made seven claims in his complaint.  Those allegations

are summarized in the table below.

---

[3]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim
"where he notifies the relevant prison . . . staff" regarding the specific factual claim
"giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596.
For example, grieving a doctor about his failure to give cardiac catheterization did
not grieve the claim that the doctor erred by not prescribing Ranexa.

| Number | Claim | Defendant | Date or Date Range |
|---|---|---|---|
| 1 | Eighth Amendment excessive force: Closing cell door and causing injury to shoulder, arm, and neck. Eighth Amendment: denial of health care. | CO Wollan | 8/27/22 |
| 2 | Failure to protect and harassment: After Wilson came back from healthcare, Wollan refused to close door placing him in danger of an attack by another inmate. | CO Wollan | 8/27/22 |
| 3 | Retaliation and harassment: After complaining to PC Vollick that Woodard and Miller denied him a single person cell, Woodard and Miller began to harass him by writing Class III misconduct tickets. | CO Woodard and CO Miller | Unknown |
| 4 | Discrimination and harassment: CO Woodward used a racial slur and CO Miller used sexual words. | CO Woodard and CO Miller | Unknown |
| 5 | Retaliation: issued a false Class I misconduct ticket after planting a homemade incendiary device (a "stinger") in cell. | CO Woodard | Unknown |
| 6 | Retaliation: denied placement in level II. | PC Vollick | Unknown |
| 7 | Eighth Amendment: denied medical care. | NP Buchanan | Unknown |

## V. Grievances

In their motion for summary judgment, Defendants identified nine grievances that Wilson filed with the MDOC. They claim that a review of these grievances demonstrates that Wilson failed to exhaust his administrative remedies. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-22-10-1676-28d | NP Buchanan | Harassing him and is | 9/28/22 | Rejected for containing | Rejection upheld | Rejection upheld |

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| (ECF No. 34-3, PageID.221-225.) | | dangerous (taking inhaler).  He no longer wants to see her because she is crazy and covering everything up. | | demeaning language | | |
| URF-22-09-1548-12d3 (*Id.*, PageID.226-231.) | NP Buchanan | Ignored shoulder, arm, and neck injury, trying to cover up for staff. | 9/2/22 | Denied | Denial upheld | Denial upheld |
| URF-22-08-1488-17a (*Id.*, PageID.232-236.) | CO Wollan | Left cell door open, placing him at risk of danger. | 8/27/22 | Denied | Denial upheld | Denial upheld |
| URF-22-08—1463-17a (*Id.*, PageID.237-241.) | CO Wollan | Failed to open door all the way and then tried to close it on Plaintiff. | 2/22/22 | Denied | Denial upheld | Denial upheld |
| URF-22-09-1571-28j (*Id.*, PageID.242-246.) | PC Vollick | Falsely stated he interviewed Plaintiff on prior Step I grievance response. | 9/8/22 | Rejected | Rejection upheld | Rejection upheld |
| URF-22-08-1489-17a (*Id.*, PageID.247-251.) | CO Wollan | Closed door on arm and shoulder. | 8/27/22 | Denied | Denial upheld | Denial upheld |
| URF-22-07-1225-27a (*Id.*, PageID.252-256.) | CO Woodard | Planted an incendiary device (stinger) in cell to harass and retaliate. | 7/13/22 | Rejected because issue involves a Class I misconduct ticket | Rejection upheld | Rejection upheld |
| URF-22-06-0995-17c (*Id.*, PageID.257-261.) | CO Miller | Harassed him by a demeaning sexual word. | 6/11/22 | Denied | Denial upheld | Denial upheld |
| URF-22-06-0966-17e (*Id.*, PageID.262-266.) | CO Woodard | Racial discrimination. Used the "N" word. | 6/11/22 | Denied | Rejected as untimely | Denial upheld |

## VI. **Misconduct Tickets**

The parties identified four Misconduct Tickets issued to Wilson. Defendants argue that a review of these documents demonstrates that Wilson has failed to exhaust his administrative remedies on his false retaliatory misconduct ticket claims. These Misconducts are summarized below.

| Issuing Officer | Misconduct Ticket | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| CO Woodard (ECF No. 34-4, PageID.270-271.) | Class I: Possession of a homemade stinger (an incendiary device). | 7/13/22 | 7/18/22 | Wilson claimed that the ticket was retaliatory. He was found guilty. | No request for a rehearing |
| CO Miller (ECF No. 1-4, PageID.53-54.) | Class III: Excessive noise – yelling while exiting shower. | 5/19/22 | 5/26/22 | Wilson claimed that someone else was yelling. not him. He was found guilty. | Not appealed |
| CO Wollan (*Id.*, PageID.55-56.) | Class III: Excessive noise – yelling and laughing loudly in the card room. | 7/9/22 | 7/22/22 | Wilson did not attend the hearing. He was found guilty. (CO Miller was the hearing officer.) | Not appealed |
| CO Keefer (*Id.*, PageID.57-58.) | Class III: Violation of posted rules – paper placed on cell door window. | 7/12/22 | 7/22/22 | Wilson did not attend the hearing. He was found guilty. (CO Miller was the hearing officer.) | Not appealed |

## VII. Analysis

### a. PC Vollick

Wilson alleges that PC Vollick retaliated against him by refusing to place him in a level II unit (claim 6 in table above).  Wilson never grieved that claim.  Wilson named PC Vollick in grievance URF-22-09-1571-28j  (*Id.*, PageID.242-246.)  But that grievance asserted that PC Vollick lied by stating he had interviewed Wilson on a misconduct ticket prior to his hearing.  In the opinion of the undersigned, PC Vollick has shown that Wilson did not file a grievance with respect to the allegation in claim 6.  Thus, PC Vollick has met his burden of establishing that Wilson failed to exhaust his administrative remedies against him.

### b. CO Woodard

Plaintiff alleges that CO Woodard issued a false retaliatory Class I misconduct ticket and false retaliatory Class III misconduct tickets (claims 3 and 5 in the table above).  During the hearing on the Class I misconduct ticket for possession of a homemade incendiary device, Wilson raised the issue that he was set up by CO Woodard.  (ECF No. 34-4, PageID.270-271.)  Wilson failed to exhaust his retaliation claim, however, because he never made a request for a rehearing after he was found guilty of the misconduct.  (*Id.*, PageID.268.)  Finally, CO Woodard did not issue Wilson a Class III misconduct ticket, and, in any case, Wilson did not raise retaliation during his Class III misconduct hearings or appeal the guilty findings.  In the opinion of the undersigned, Wilson failed to exhaust his retaliation claims against CO Wilson based upon the issuance of false misconduct tickets.

To the extent that Wilson can assert an actionable Eighth Amendment claim against CO Woodard for using the "N" word (claim 4 in the table above), Wilson failed to properly grieve that claim because his Step II appeal was submitted late.  Wilson raised this claim in grievance URF-22-06-0966-17e. (*Id.,* PageID.262-266.)  Wilson's grievance was rejected as untimely at Step II. (*Id.*, PageID.264.)  The Supreme Court held in *Woodford*,  548 U.S. at 92-93, that the PLRA exhaustion requirement requires "proper exhaustion."

"Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 90-95.  Proper exhaustion is a precondition to any suit challenging prison conditions.  *Id.*  Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred.  In the opinion of the undersigned, Wilson failed to properly exhaust his claim that CO Woodard used the "N" word.  In the opinion of the undersigned, CO Woodard has established that Wilson failed to properly exhaust the claims asserted against Woodard.

### c.  CO Miller

Wilson alleges that CO Miller issued false retaliatory Class III misconduct tickets or found him guilty of misconduct tickets issued by other officers (claim 3 in the table above).  Wilson never raised the issue of retaliation during any of Class III

misconduct hearings[4], and he did not appeal the misconduct findings.  In the opinion of the undersigned, Wilson failed to exhaust his false retaliatory misconduct claims against CO Miller.

Wilson alleges that CO Miller used inappropriate sexual language (claim 4 in the table above).  Wilson did raise this issue in a grievance.  Wilson's Step I grievance URF-22-06-0995-17c (ECF No. 34-3, PageID.257) stated:



(*Id.*)  Wilson exhausted this grievance through Step III.

The remaining issue against CO Miller is whether Wilson's allegations of sexual harassment state an Eighth Amendment cause of action.  Wilson alleges that CO Miller verbally harassed him by calling him offensive names.  Under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. 1997e(c) a federal court is required to dismiss any prisoner action brought under federal law if the allegations in the complaint are frivolous, malicious, fails to state a claim upon which

---

[4]     Wilson failed to attend the two misconduct hearings that CO Miller acted as the hearing officer.

14

relief may be granted, or seeks monetary relief from a defendant immune from such relief.  *Id.*  A federal court may dismiss allegations in a complaint that are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is

perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S. at 848–49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* 76 F. App'x 24, 27 (6th Cir. 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Moreover, the Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Violett*, 76 F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation."). Other courts have agreed. *See, e.g., Davis v.*

*Goord,* 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986).

In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095. The *Rafferty* court found an Eighth Amendment violation when a prison official sexually harassed a prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched. The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty* is distinguishable from the facts of this case. Here, Wilson alleges that CO Miller told him to "stop acting liking a pussy" and only "F[ ]s" or "predators" get single rooms. In the opinion of the  undersigned, while those comments are certainly unprofessional, they fail to rise to the level of a constitutional violation.

## VIII.  Plaintiff's motion for Summary Judgment

Wilson argues that there is no dispute that Defendants violated his rights by harassing him and retaliating against him. (ECF No. 43.)  Wilson argues that his complaint, which is unverified, is not disputed. Wilson has not submitted any evidence which supports the allegations in his complaint. Wilson's complaint is unverified, and "unverified complaints, are not considered Rule 56 evidence." *Zeune. v. Mohr*, 2015 WL 6468541, at *6 (S.D. Ohio 2015); *see also Jackson v. Kline*, 2017 WL 2262502, at *3 (E.D. Mich. 2017) ("[U]nverified complaints like the one at issue cannot be considered Rule 56 evidence."). Wilson also failed to attach any other

17

admissible evidence to any of his filings, such as depositions, affidavits and declarations, stipulations, admissions, or interrogatory answers. *See* Fed. R. Civ. P. 56. Summary judgment is not appropriate on this record. At best, a genuine issue of material fact exists on the remaining claims. In the opinion of the undersigned, Wilson has failed in his burden to show that he is entitled to summary judgment in his favor.

## IX.  Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment and dismiss Defendants Woodard, Miller, and Vollick from this action without prejudice due to Wilson's failure to exhaust his administrative remedies against them.

Further, it is respectfully recommended that the Court deny Plaintiff's motion for summary judgment.

If the Court accepts this recommendation the remaining claims will be against Defendants Wollan (claims 1 and 2 in the table above) and Buchanan (claim 7 in the table above).


Dated:   October 27, 2023              /s/ *Maarten Vermaat*
                                       MAARTEN VERMAAT
                                       U. S. MAGISTRATE JUDGE



## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P.

18

72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).