UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DWAYNE EDMUND WILSON #258602,

    Plaintiff,

v.

UNKNOWN WOLLAN, et al.,

    Defendants.
_____/

Case No. 2:23-cv-00013

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment. (ECF Nos. 80 (motion by Defendant Wollan) and 82 (motion by Defendant Buchanan).)

State prisoner Dwayne Wilson filed a complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights. (ECF No. 1.) The alleged events occurred at the Chippewa Correctional Facility (URF). (*Id.*) Wilson alleged that on August 27, 2022, Defendant Corrections Officer (CO) Wollan injured him by closing his cell door on him, and then denied him medical care. (*Id.*, PageID.3.) Wilson says that he was then moved to a new unit where two defendants – CO Woodard and CO Miller – began harassing him. (*Id.*, PageID.6.) And Wilson says that Defendant Prison Counselor (PC) Vollick told him that he would not get a single cell. (*Id.*) Wilson also says that Nurse Practitioner (NP) Buchanan told him there was nothing wrong with him and refused to provide care. (*Id.*, PageID.10.)

On November 16, 2023, the Court dismissed Plaintiff's claims against Defendants Woodward, Miller, and Vollick. (ECF No. 51.)

The remaining Eighth Amendment claims are against CO Wollan for injuring Plaintiff by closing the cell door on Plaintiff's arm, shoulder, and neck, and against CO Wollan and NP Buchanan for refusing to provide medical care.

CO Wollan and NP Buchanan move for summary judgment. (ECF Nos. 80 and 82, respectively.) In his response to NP Buchanan's motion for summary judgment (ECF No. 83), Wilson says that he is entitled to summary judgment on his claim that NP Buchanan denied him medical care.

It is respectfully recommended that the Court grant Defendants' motions for summary judgment because no genuine issue of material fact exists as to Wilson's Eighth Amendment claims, thus entitling both Defendants to judgment in their favor. As an initial matter, Wilson's official capacity claim for damages against Wollan should be dismissed because damages are not available for such a claim. Second, based on the record before the Court, Wilson has failed to establish a genuine issue of material fact with respect to his claim that CO Wollan violated his Eighth Amendment rights by maliciously and sadistically closing the cell door on his arm, shoulder, and neck. Furthermore, Wilson has failed to establish a genuine issue of material fact with respect to his claim show that he was denied medical care for his alleged injuries. Finally, Wilson has failed to establish a genuine issue of material fact with respect to his claim NP Buchanan refused to treat him for his alleged injuries. Wilson was examined by a registered nurse (RN) on the day of his alleged

injury, and NP Buchanan approved shoulder x-rays, pain medication, and a sling. The x-rays showed no injury to Wilson's right or left shoulder. Wilson's disagreement with the treatment that he received and the results of the x-ray on his shoulder are insufficient to establish a genuine issue of material fact with regard to his alleged Eighth Amendment violation. In the opinion of the undersigned, Wilson's remaining claims against CO Wollan and NP Buchanan should be dismissed.

## II. Factual Allegations

Wilson alleges that, on August 27, 2022, while he was trying to leave his cell, CO Wollan closed the cell door on him, thus causing injuries. (ECF No. 1, PageID.3.) Wilson says that after he sustained injuries, CO Wollan laughed at him with other officers, called him a "fucking crying baby", and then denied him health care. (*Id.*) Wilson says that CO Wollan had been trying to close the door on him for months. (*Id.*) Wilson says he waited four hours before a Sergeant escorted him to health care. (*Id.*, PageID.4.) Wilson also says that when he returned from healthcare, CO Wollan refused to close his cell door. (*Id.*) Wilson says that this placed his life at risk. (*Id.*)

After he arrived at health care, Wilson says that NP Buchanan told him there was nothing wrong with him. (*Id.*, PageID.10.) Wilson believes that NP Buchanan was trying to cover up for what staff had done to him. (*Id.*) When Wilson asked for someone else to evaluate him, NP Buchanan refused. (*Id.*) Wilson then allegedly went on a hunger strike because he claims he was refused care for his arm, shoulder, and neck. (*Id.*) At some point, during the hunger strike, Wilson says he felt sick, but he was refused a COVID test. (*Id.*, PageID.11.) Wilson says that he has lung

3

disease and asthma. (*Id.*) Wilson says that he was denied care due to neglect and cruelty. (*Id.*) Wilson requests one million dollars from each Defendant. (*Id.*, PageID.12.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV.    Sovereign Immunity

Wollan argues that he is entitled to sovereign immunity in his official capacity as to Wilson's claim for monetary damages, and that Wilson's complaint did not set forth a claim against him in his individual capacity. (ECF No. 81, PageID.487-489.)

4

Wilson's complaint seems to indicate that he is suing Wollan in his official capacity. Page 2 of his complaint includes this listing:

> III. Parties
>
> A. Plaintiff(s)
>
> Place your name in the first blank and your present address in the second blank. Provide the same information for any additional plaintiffs. Attach extra sheets as necessary.
>
> Name of Plaintiff Dwayne Edmund Wilson
> Address G. Robert Correctional Facility 3500 N. Elm Rd. Jackson, MI 49201
>
> B. Defendant(s)
>
> Complete the information requested below for each defendant in this action, including whether you are suing each defendant in an official and/or personal capacity. If there are more than four defendants, provide the same information for each additional defendant. Attach extra sheets as necessary.
>
> Name of Defendant #1 Officer Wollan
> Position or Title Correction Officer
> Place of Employment Chippewa Correctional Facility W-MAS-K
> Address 4269 W. M-80 Kincheloe MI 49784
> Official and/or personal capacity? Officer

(ECF No. 1, PageID.2.) A common sense reading of this listing is that Wilson is suing Wollan in his official capacity.

Moreover, Plaintiffs pursuing claims against state actors under 42 U.S.C. § 1983, even those proceeding pro se, must properly allege capacity in their complaint. Fed. R. Civ. P. 9(a) ("Except when required to show that the court has jurisdiction, a pleading need not allege a party's capacity to sue or be sued."); *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989) ("[B]ecause the Eleventh Amendment places a jurisdictional limit on federal courts in civil rights cases against states and state employees, we understand Rule 9(a) [of the Federal Rules of Civil Procedure] to require plaintiffs to properly allege capacity in their complaint."). But while it is "clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her individual capacity . . . failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Moore v. City of*

5

*Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (footnote omitted) (citing *Hardin v. Straub*, 954 F.2d 1193, 1200 (6th Cir. 1992)).

Looking at the course of proceedings in this case, the undersigned cannot say that CO Wollan was placed on sufficient notice that she was being sued in his *individual capacity*. In Wilson's complaint, Wilson consistently referred to CO Wilson by Wilson's official title. And, as shown above, Wilson indicated that he was suing CO Wilson as an "officer" where the complaint asked whether he was suing in "[o]fficial and/or personal capacity." (ECF No. 1, PageID.2.)

The only thing in Wilson's complaint that suggests an intent to sue CO Wollan in his individual capacity is that he requested monetary damages. But in *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002), the Sixth Circuit determined that this factor is insufficient to provide defendants fair notice that they are being sued in their individual capacity when the rest of the complaint suggests they are being sued in their official capacity. And none of the documents filed between Wollan's complaint and the present motion for summary judgment indicate that the parties understood Wilson to be asserting an individual-capacity claim against CO Wollan.[1] It is

---

[1] Defendant Wollan did argue an entitlement to qualified immunity – seeking dismissal of the monetary damage claims against him in his individual capacity – in his summary judgment motion, which undercuts his argument that he was not on notice that Wilson was suing him in his individual capacity. But Wollan's qualified immunity argument is simply an unnecessary repetitive argument that Wilson cannot support an Eighth Amendment claim on the facts and does not present a viable argument that Wilson failed to establish factual allegations showing a violation of clearly established Eighth Amendment law.

6

recommended that the Court conclude that Wilson's claim for monetary damages is against CO Wollan *in his official capacity alone.*

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

In the opinion of the undersigned, Wilson is only seeking monetary damages in his complaint from Wollan in Wollan's official capacity. Accordingly, because CO Wollan is entitled to sovereign immunity in his official capacity, it is respectfully recommended that the Court dismiss CO Wollan from this lawsuit.

**V. Eighth Amendment**

    1.  **Negligence by CO Wollan**

Wilson alleges that CO Wollan acted with negligence by closing the cell door on him. Wilson says that after tissue paper was delivered to his cell by dropping it off on the floor outside his cell door, his cell door did not open all way. (ECF No. 81-2, PageID.515 (Wilson's deposition).) Wilson reached out of his cell to pick up the tissue

paper, and at that moment the cell door closed on him. (*Id.*) Wilson insists that his unsworn claim that CO Wollan acted in a manner he describes as "negligence" is sufficient to defeat Wollan's motion for summary judgment on Wilson's Eighth Amendment cause of action. (ECF No. 84, PageID.824-828.)

The Eighth Amendment limits the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

To establish an Eighth Amendment claim, Plaintiff must satisfy both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298).

Under the subjective component, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992). The Court "must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474

8

(2015). In determining whether the use of force is malicious or sadistic, the Court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7.

Under the objective component, the pain inflicted must be "sufficiently serious." *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298). The Court's inquiry regarding the seriousness of the injury is "contextual" and is "responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8–9. While the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

CO Wollan provided an affidavit explaining the circumstances regarding the cell door closure:

> 4. It is well known that the automatic cell doors in Michigan prisons operate much like an elevator door. They are slow and have a safety feature that stops them if something gets in the way of the door closing.
>
> 5. On a regular basis, prisoners prevent their doors from closing, and if they intentionally prevent their door from closing, they are subject to receiving a misconduct report. When prisoners try to block the locking mechanism it creates a serious safety and security risk as it prevents them from being secured in their cell.
>
> 6. The doors are controlled from an enclosed area on the main level known as the bubble.
>
> 7. This was a higher security housing unit, and as we release prisoners, we open the doors in smaller groups to have a more controlled movement.
>
> 8. Times during movement are the more dangerous times because multiple prisoners are coming out together and able to interact. We are constantly monitoring for immediate conflicts when the doors start opening.
>
> 9. While attempting to open one set of doors, I accidently started to open Mr. Wilson's door, but stopped it because it was not time for his release.
>
> 10. When I pressed the button again, his door began to close. I did not know that Mr. Wilson had reached his arm out the door to retrieve tissue paper off the ground in front of his door, and I did not see the door hit Mr. Wilson.
>
> 11. He did not get caught or trapped in the door.

(ECF No. 81-3, PageID.533 (affidavit of CO Wollan).)

In his response brief, Wilson says that it is not true that a prisoner can stop a cell door from closing. But Wilson did not make a sworn statement or provide admissible evidence showing that he was unable to stop the cell door from closing. Although Wilson makes various allegations against Wollan in his complaint, Wilson's complaint was unverified; thus, it does not have the force or effect of an affidavit. *See Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (explaining that *verified* complaints have the same force and effect as affidavits). Failing to contradict Defendant's affidavit with sworn testimony or admissible evidence fails to defeat a motion for summary judgment. *Spearman v. Fielding*, 2:15-cv-15 (W.D. Mich. Feb. 23, 2017) ("According to the evidence presented by Fielding, it would have been impossible for him to purposely shut a cell door on Spearman because the cell doors open and close very slowly and stop moving if they make contact with something. Spearman did not present anything that contradicts Fielding's evidence.")

Wilson's allegations are simply insufficient to overcome Wollan's affidavit stating that he "accidentally" opened the cell door and then closed the door because it was not time for Wilson's release. Wollan further states that he did not know that Wilson reached outside his cell to pick up the tissue paper at the time he closed the cell door. Wilson has failed to show that Wollan acted maliciously and sadistically to cause harm. In fact, Wilson has never made such allegations, rather he has only alleged that Wollan acted negligently. Accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir, Dec. 5, 1994) (citing

11

*Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

Ultimately, the undersigned finds that there are no genuine issues of material fact with respect to the subjective component of Wilson's Eighth Amendment claim, and that the evidence on the record reflects that Wilson was unintentionally shut in his cell door on August 27, 2022. The undersigned therefore respectfully recommends that CO Wollan is entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim.[2]

### 2.  Failure of CO Wollan and NP Buchanan to provide medical care

Wilson says that after the cell door was closed on his neck, shoulder, and arm, Defendants CO Wollan and NP Buchanan failed to provide him with medical care and treatment for his injuries. Wilson says that CO Wollan was negligent by failing to provide him with immediate medical care, causing a delay before the Sergeant took him to health care. Wilson says that NP Buchanan denied him medical treatment including a COVID test, and he still suffers with pain in his neck, shoulder, and arm.

---

[2]  In addition, Plaintiff's claim that his life was in danger after he returned from lunch because CO Wollan refused to close the cell door, leaving him vulnerable to other inmates who could have entered his cell and harmed him, fails to rise to an Eighth Amendment violation and is purely based upon speculation. CO Wollan explained that he left the door open because Plaintiff was agitated, and a prisoner cannot get hurt by the automatic door unless he intentionally tries to get injured by the door. (ECF No. 811-3, PageID.534.) CO Wollan did not want Plaintiff to purposely try to injure himself, and there was no other movement in the unit during the time that the cell door was open. (*Id.*) Finally, CO Wollan states that housing unit officers were monitoring Wilson's door to make sure he remained in his cell and no one else entered. (*Id.*)

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Where a prisoner challenges their treatment as inadequate, a prisoner must show more than a serious medical need. *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). To establish the objective component in a situation where a prisoner asserts that the care received was inadequate, a prisoner must prove grossly inadequate care which generally requires the introduction of medical evidence typically in the form of expert testimony. *Id.*

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a

13

defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"  *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

The subjective component was summarized in *Rhinehart*. There, the court of appeals stated the following:

> [T]he plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

CO Wollan says that because Wilson was not experiencing a life-threatening situation when he complained that he was in pain from the cell door striking him, he had to wait a short time to see health care. Wilson states that he had to wait until a Sergeant took him to health care approximately four hours after the cell door was closed on him. Wilson failed to present medical evidence into the record that could

14

establish that the short delay between the time he was taken to health care violated his Eighth Amendment rights.

Moreover, Wilson was provided with appropriate medical care. Wilson simply disagrees with the medical care that he received. More specifically, Wilson disagrees with the radiologist report that was unremarkable and showed no soft tissue damage. This is not a case, as presented by Wilson, of a denial of medical care. Rather, Wilson disagrees with the medical assessment and treatment that he received.

Wilson was first examined by RN Hense on August 27, 2022, with complaints of aching pain in his right arm, shoulder, and neck. (ECF No. 82-1, PageID.597-599.) RN Hense noted "no visible injury, no swelling, unwilling to allow passive ROM, would not move shoulder girdle active ROM." (*Id.*, PageID.598.) After RN Hense contacted NP Buchanan, an x-ray of Wilson's shoulder was ordered, he was provided a sling, and Ibuprofen. (*Id.*, PageID.598-599, ECF No. 82-2, PageID.765.) NP Buchanan co-signed RN Hense's Clinical Encounter notes for the August 27, 2022, examination on August 29, 2022. (ECF No. 82-1, PageID.600.)

Wilson received x-rays of his right and left shoulder. (*Id.*, PageID.602-603, 605-606.) The results were unremarkable. (*Id.*) Although Wilson disagrees with the results of his x-rays and radiologist's report that the x-ray did not show an injury to his right shoulder, Wilson has failed to present any contradictory admissible evidence into the record. The record shows that Wilson was provided medical care and treatment for his alleged injury. The fact that Wilson disagrees with the treatment and diagnosis that he received, is insufficient to establish a violation of the Eighth

15

Amendment. In the opinion of the undersigned, no genuine issue of fact exists on Wilson's claim that he received no treatment of medical care for his alleged arm, shoulder, and neck injury. The record establishes otherwise, and Defendants are entitled to summary judgment on Wilson's Eighth Amendment claims.

Wilson went on a hunger strike to protest the diagnosis of his alleged injuries and has asserted other allegations that NP Buchanan failed to provide him with medical care. The record shows that Wilson continued to receive medical care while he engaged in the hunger strike. (*Id.*, PageID.609-764.) Further, Wilson's claim that he was denied a COVID test or not given things that he believed he needed such as medications or medical accommodations are nothing more than differences of opinions with his medical providers. The record shows that Wilson received appropriate medical care while he was under NP Buchanan's care during his confinement at URF until his transfer to a different facility in October of 2022. (ECF No.82-2, PageID.769.)

In the opinion of the undersigned, no genuine issue of fact exists on Wilson's claim that he received no treatment or medical care for his alleged arm, shoulder, and neck injury. The record establishes otherwise, and Defendants are entitled to summary judgment on Wilson's Eighth Amendment claims.

### VI. Recommendation

Accordingly, it is respectfully recommended that the Court grant Defendants' motions for summary judgment and dismiss this case.[3]

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   October 16, 2024                         /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U.S. MAGISTRATE JUDGE

---

[3]   Wilson requests summary judgment in response NP Buchanan's motion for summary judgment. (ECF No. 83.) In the opinion of the undersigned for the reasons stated in this R&R Wilson has not shown that no genuine issue of material fact exists entitling him to summary judgment.